QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Frederick A. Lorig (Bar No. 057645)
  fredlorig@quinnemanuel.com
  Christopher A. Mathews (Bar No. 144021)
  chrismathews@quinnemanuel.com
  Bruce R. Zisser (Bar No. 180607)
  brucezisser@quinnemanuel.com
  Sidford Lewis Brown (Bar No. 107196)
  sidfordbrown@quinnemanuel.com
  Vincent M. Pollmeier (Bar No. 210684)
  vincentpollmeier@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Plaintiff
MULTIMEDIA PATENT TRUST

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MULTIMEDIA PATENT TRUST, a Delaware statutory trust,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC., a California corporation, CANON, INC., a Japanese corporation, CANON U.S.A., INC., a New York corporation, LG ELECTRONICS, INC., a Korean corporation, LG ELECTRONICS U.S.A., INC., a Delaware corporation, LG ELECTRONICS MOBILECOMM U.S.A., INC., a California corporation, TIVO, INC., a Delaware corporation,<br><br>Defendants. | CASE NO.  **'10CV2618 JLS  RBB**<br><br>COMPLAINT FOR PATENT INFRINGEMENT<br><br>DEMAND FOR JURY TRIAL |

03718.22442/3736518.12

COMPLAINT FOR PATENT INFRINGEMENT

**COMPLAINT**

Plaintiff Multimedia Patent Trust ("MPT") for its complaint against Defendants Apple Inc. ("Apple"); Canon, Inc. and Canon U.S.A., Inc. ("Canon U.S.A.") (collectively "Canon"); LG Electronics, Inc., LG Electronics U.S.A., Inc. ("LG U.S.A.") and LG Electronics MobileComm U.S.A., Inc. ("LG MobileComm") (collectively "LG"); and TiVo, Inc. ("TiVo") (all collectively "Defendants"), hereby demands a jury trial and alleges as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

2. Venue is established in this judicial district pursuant to 28 U.S.C. §§ 1391(c) and 1400(b).

**Nature of the Action**

3. This is a civil action for infringement of United States Patent Nos. 4,958,226; 5,136,377; 5,227,878 and 5,500,678 (the "Patents-in-Suit"). This action is based upon the Patent Laws of the United States, 35 U.S.C. § 1 et seq.

**Parties**

4. Plaintiff Multimedia Patent Trust is a Delaware statutory trust under the Delaware Statutory Trust Act, 12 Del. Code title 12 §§ 3801, et seq.

5. On information and belief, Defendant Apple is incorporated under the laws of the state of California, having its principal place of business at 1 Infinite Loop, Cupertino, California 95014. Apple products accused of infringement in this Complaint are and have been offered for sale and sold in this and other judicial districts for a period not yet known but continuing to this date. Further, on information and belief, Apple operates one or more retail establishments in this judicial district through which it sells the accused Apple products.

6. On information and belief, Defendant Canon, Inc. is incorporated under the laws of Japan, having its principal place of business in Tokyo, Japan. On information and belief, Canon, Inc. manufactures the products alleged to infringe herein and controls the decision of Canon

U.S.A. to infringe or license the patents herein as an agent of the principal parent corporation, Canon, Inc.

7.  On information and belief, Defendant Canon U.S.A. is incorporated under the laws of the state of New York, having its principal place of business at One Canon Plaza, Lake Success, NY 11042.  Canon U.S.A.'s products accused of infringement in this Complaint are and have been offered for sale and sold in this and other judicial districts for a period not yet known but continuing to this date.

8.  On information and belief, Canon, Inc. and its agent Canon U.S.A. (collectively "Canon") have and continue to collaborate in the manufacture, marketing and sale, in the United States, of the Canon products accused of infringement in this Complaint.

9.  On information and belief, Defendant LG Electronics, Inc. is incorporated under the laws of the Republic of Korea, having its principal place of business in Seoul, Republic of Korea.  On information and belief, LG Electronics, Inc. manufactures the products alleged to infringe herein and controls the decisions of LG U.S.A. and LG Mobilecomm to infringe or license the patents herein as agents of the principal parent corporation, LG Electronics, Inc.

10.  On information and belief, Defendant LG U.S.A. is incorporated under the laws of the state of Delaware, having its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, NJ 07632.  LG U.S.A.'s products accused of infringement in this Complaint are and have been offered for sale and sold in this and other judicial districts for a period not yet known but continuing to this date.  On information and belief, LG USA operates marketing and/or distribution facilities in this judicial district.

11.  On information and belief, Defendant LG MobileComm is incorporated under the laws of the state of California, having its principal place of business in this judicial district at 10101 Old Grove Rd, San Diego, CA 92131.  LG MobileComm's products accused of infringement in this Complaint are and have been offered for sale and sold in this and other judicial districts for a period not yet known but continuing to this date.

12. On information and belief, LG Electronics, Inc. and its agents LG U.S.A. and LG MobileComm (collectively "LG") have and continue to collaborate in the manufacture, marketing and sale, in the United States, of the LG products accused of infringement in this Complaint.

13. On information and belief, Defendant TiVo is incorporated under the laws of the state of Delaware, having its principal place of business at 2160 Gold St., Alviso, CA 95002. TiVo products accused of infringement in this Complaint are and have been offered for sale and sold in this and other judicial districts for a period not yet known but continuing to this date.

## Background Facts and the Patents-in-Suit

14. The Patents-in-Suit are generally directed to systems and methods of encoding and decoding signals representative of moving images (*i.e.*, "video compression").

15. Video compression techniques are used in many industries that involve either the transmission of video from one location to another and/or the manufacture and sale of devices to receive or store video signals. These industries include, for example: content providers; cable and satellite companies; teleconferencing providers; television, electronics and cellular telephone manufacturers; television broadcasters and digital media providers.

16. Video compression reduces the amount of digital data needed to represent video so that it can be sent more efficiently over communications media, such as the Internet and satellites, or stored more efficiently on storage media such as DVDs and Blu-Ray disks. Video consists of a series of pictures, or frames, with each frame capturing a scene at an instant of time. When viewed consecutively, the frames form video sequences. Video compression involves reducing the amount of digital data needed to represent information about the content of these pictures or frames while allowing a video to ultimately be reproduced from that information.

17. There are numerous benefits to video compression. For instance, it enables large amounts of video data to be stored on smaller memory devices and permits broadcasters to transmit greater numbers of programs using the same bandwidth over a particular transmission medium. For example, without video compression it would be impossible to store a feature-length film on a single DVD. Also, video retrieval via the Internet would not be feasible due to the huge volume of uncompressed data that would need to be transmitted. The challenge that comes with

1  video compression, however, is assuring that the video image ultimately reproduced from the
2  reduced amount of digital data is of sufficient quality.

3  　　　　18.　　A video signal is encoded (compressed) prior to being transmitted over a medium
4  or before it is stored on a medium.  When the video signal is read off the storage medium or is
5  received at the other end, it is decoded (decompressed) to recreate either the original signal or, in
6  the case of a lossy compression technique (by which certain unnecessary bits of data are
7  eliminated), a close approximation of the original signal.  When encoding a video, the video signal
8  is processed using a variety of techniques that reduce the amount of data, such as transformation,
9  quantization, motion-compensated prediction and variable length encoding.

10  　　　　19.　　Lucent, and its predecessor AT&T, Inc., through their research arm Bell Labs, have
11  a long history of research and development in the area of video compression.  The Patents-in-Suit
12  claim apparatus and methods, developed at Bell Labs, for the encoding and decoding of video data
13  which are used in software and devices supporting various international standards, including
14  MPEG-2, MPEG-4, Part 2, H.263 and MPEG-4, Part 10 (H.264) video coding.  Lucent
15  transferred, assigned, conveyed, delivered and vested to MPT all of Lucent's interests and rights in
16  the Patents-in-Suit in all countries and jurisdictions, along with the right to sue for past
17  infringement (including all current and future claims and causes of action).

18  　　　　20.　　On September 18, 1990, the United States Patent and Trademark Office
19  ("USPTO") issued U.S. Patent No. 4,958,226 ("the '226 Patent") to Barin G. Haskell and Atul
20  Puri for their invention entitled "Conditional Motion Compensated Interpolation of Digital Motion
21  Video."  On September 1, 2009, the USPTO issued a reexamination certificate confirming the
22  patentability of Claim 12 of the '226 patent, the only claim reexamined.  MPT is now sole owner
23  of the '226 patent.  A copy of the '226 Patent and the Ex Parte Reexamination Certificate are
24  attached hereto as Exhibit A.

25  　　　　21.　　On August 4, 1992, the USPTO issued U.S. Patent No. 5,136,377 ("the '377
26  Patent") to James D. Johnston, Scott C. Knauer, Kim N. Matthews, Arun N. Netravali, Eric D.
27  Petajan, Robert J. Safranek, and Peter H. Westerink for their invention entitled "Adaptive Non-
28

Linear Quantizer." MPT is now sole owner of the '377 patent. A copy of the '377 Patent is attached hereto as Exhibit B.

22. On July 13, 1993, the USPTO issued U.S. Patent No. 5,227,878 ("the '878 Patent") to Atul Puri and Rangarajan Aravind for their invention entitled "Adaptive Coding and Decoding of Frames and Fields of Video." MPT is now sole owner of the '878 patent. On September 27, 2005, the USPTO issued a Certificate of Correction for the '878 patent. A copy of the '878 Patent and its Certificate of Correction are attached hereto as Exhibit C.

23. On March 19, 1996, the USPTO issued U.S. Patent No. 5,500,678 ("the '678 Patent") to Atul Puri for his invention entitled "Optimized Scanning of Transform Coefficients in Video Coding." MPT is now sole owner of the '678 patent. On May 29, 2007, the USPTO issued a Certificate of Correction for the '678 patent. A copy of the '678 Patent and its Certificate of Correction are attached hereto as Exhibit D.

## COUNT I

### (Patent Infringement Against Apple)

24. Paragraphs 1 through 23 are incorporated by reference as if stated fully herein.

25. Apple continues to make, have made, use, sell, and offer for sale in the United States, and import into the United States, computers and computing devices, computer software, wireless telephones, and portable digital music players, which are capable of encoding and decoding digital video.

26. These Apple products can encode and decode video in compliance with a variety of standards promulgated by the International Organization for Standardization (ISO) and the International Telecommunications Union (ITU), including MPEG-2, MPEG-4, Part 2, and H.264. The ability to encode and/or decode video images in these formats are included, via Apple's built-in QuickTime system, in Apple's laptop computers, desktop computers, and other computing devices, including its MacBook, MacBook Pro, MacBook Air, iMac, Mac Mini, iPad and Mac Pro lines of computers; are included in separately sold Apple software or software suites, including Final Cut Studio, Final Cut Express, Final Cut Pro, Final Cut Server, iLife, QuickTime X, QuickTime Player, QuickTime Pro, and iTunes; are found in Apple's Apple TV device; and are

found in Apple's wireless telephones and portable digital music players, including the iPhone 3G, iPhone 3GS, iPhone 4, the 5th and 6th generations of the iPod, the 3rd, 4th, and 5th generations of the iPod Nano, and all versions of the iPod Touch.

27. Apple's products, including but not limited to the MacBook, MacBook Pro, MacBook Air, iMac, Mac Mini, iPad, Mac Pro, Final Cut Studio, Final Cut Express, Final Cut Pro, Final Cut Server, iLife, QuickTime X, QuickTime Player, QuickTime Pro, iTunes, Apple TV, iPhone 4, and the iPod Touch (4th Gen), by virtue of the manner in which they encode and/or decode video, infringe one or more claims of the '226 patent.

28. Apple's products, including but not limited to the MacBook, MacBook Pro, MacBook Air, iMac, Mac Mini, Mac Pro, Final Cut Studio, Final Cut Express, Final Cut Pro, Final Cut Server, iLife, QuickTime X, QuickTime Pro, iPhone 3GS, iPhone 4, iPod Nano (5th Gen), and the iPod Touch (4th Gen), by virtue of the manner in which they encode video, infringe one or more claims of the '377 patent.

29. Apple's products, including but not limited to the MacBook, MacBook Pro, MacBook Air, iMac, Mac Mini, iPad, Mac Pro, Final Cut Studio, Final Cut Express, Final Cut Pro, Final Cut Server, iLife, QuickTime X, QuickTime Player, QuickTime Pro, iTunes, Apple TV, iPhone 3G, iPhone 3GS, iPhone 4, iPod (5th and 6th Gen), iPod Nano (3rd -5th Gen), and the iPod Touch (1st-4th Gen), by virtue of the manner in which they encode and/or decode video, infringe one or more claims of the '878 patent.

30. Apple, therefore, by making, having made, offering for sale, selling and/or importing its video-capable products, has been and still is directly infringing, contributorily infringing, and/or inducing others to infringe each of the MPT Patents identified above in paragraphs 27-29. Apple will continue to infringe unless enjoined by this court.

31. As a result of Apple's infringement of the above-identified patents, MPT is entitled to a reasonable royalty on all video-capable products sold by Apple that embody an apparatus claimed by those patents.

32. Apple's infringement of the MPT patents has caused and will continue to cause MPT and its existing licensees substantial and irreparable injury for which MPT is entitled to receive injunctive relief and damages adequate to compensate it for such infringement.

33. Apple has had actual knowledge of the claims of the '226, '377, and '878 patents since no later than March 15, 2007 when MPT notified Apple of its infringement of those patents. Despite such knowledge, Apple has refused to take a license and continues to infringe the patents willfully and deliberately in disregard of MPT's patent rights.

## COUNT II

### (Patent Infringement Against Canon)

34. Paragraphs 1 through 23 are incorporated by reference as if stated fully herein.

35. Canon continues to offer for sale and sell in the United States, and import into the United States, digital video cameras (camcorders); digital still cameras capable of capturing digital video; and devices capable of encoding captured video onto disk. Canon's digital video recording products accused of infringement by this Complaint include, but are not limited to, the VIXIA line of HD camcorders, the PIXELA ImageMixer 3SE video processing software distributed with each VIXIA HD camcorder, the DW-100 DVD Burner, the FS series digital camcorders, the DC series DVD camcorders, the Roxio MyDVD video processing software distributed with each DC series DVD camcorder, the Optura line of digital camcorders, Canon's professional line of HD camcorders, the PowerShot line of digital still cameras, and the EOS line of digital SLR cameras. These Canon products can variously encode and decode video in compliance with a variety of standards promulgated by the International Organization for Standardization (ISO) and the International Telecommunications Union (ITU), including MPEG-2, MPEG-4, Part 2, and H.264.

36. Canon's products, including but not limited to the VIXIA line of HD camcorders, the PIXELA ImageMixer 3SE video processing software distributed with each VIXIA HD camcorder, and the Roxio MyDVD video processing software distributed with each DC series DVD camcorder, by virtue of the manner in which they encode and/or decode video, infringe one or more claims of the '226 patent.

37. Canon's products, including but not limited to the VIXIA line of HD camcorders, the PIXELA ImageMixer 3SE video processing software distributed with each VIXIA HD camcorder, the DW-100 DVD Burner, the FS series digital camcorders, the DC series DVD camcorders, the Roxio MyDVD video processing software distributed with each DC series DVD camcorder, the Optura line of digital camcorders, Canon's professional line of HD camcorders, the PowerShot line of digital still cameras, and the EOS line of digital SLR cameras, by virtue of the manner in which they encode video, infringe one or more claims of the '377 patent.

38. Canon's products, including but not limited to the VIXIA line of HD camcorders, the PIXELA ImageMixer 3SE video processing software distributed with each VIXIA HD camcorder, the DW-100 DVD Burner, the Roxio MyDVD video processing software distributed with each DC series DVD camcorder, the Optura line of digital camcorders, the PowerShot line of digital still cameras, and the EOS line of digital SLR cameras, by virtue of the manner in which they encode and/or decode video, infringe one or more claims of the '878 patent.

39. Canon's products, including but not limited to the VIXIA line of HD camcorders, by virtue of the manner in which they encode video, infringe one or more claims of the '678 patent.

40. Canon, therefore, by the importing, offering for sale and selling of its video-capable products, has been and still is directly infringing, contributorily infringing and/or inducing others to infringe, each of the MPT patents identified above in paragraphs 36-39. Canon will continue to infringe unless enjoined by this court.

41. As a result of Canon's infringement of the above-identified patents, MPT is entitled to a reasonable royalty on all camcorder, camera and related products sold by Canon that embody an apparatus or practice a method claimed by those patents.

42. Canon's infringement of the MPT patents has caused and will continue to cause MPT and its existing licensees substantial and irreparable injury for which MPT is entitled to receive injunctive relief and damages adequate to compensate it for such infringement.

43. Canon has had actual knowledge of the apparatus claims of the '226, '377, '878 and '678 patents since no later than March 19, 2007 when MPT notified Canon of its infringement

of the Patents-in-Suit. Despite such knowledge, Canon has refused to take a license and continues to infringe the patents willfully and deliberately in disregard of MPT's patent rights.

### COUNT III

### (Patent Infringement Against LG)

44. Paragraphs 1 through 23 are incorporated by reference as if stated fully herein.

45. LG continues to offer to sell and sell in the United States, and import into the United States, cellular telephones having the ability to encode and decode video. LG's video-capable cellular telephones accused of infringement by this Complaint, including, but not limited to the Ally (V5740), Apex (US740), Axis (LGAS740), Banter Touch (UN510), Bliss (UX700), Chocolate (VX8500), Chocolate (VX8550), Chocolate 3 (VX8560), Chocolate Touch (VX8575), Dare (VX9700), Decoy (VX8610), Encore (GT550), EnV (VX9900), enV Touch (VX11000), EnV2 (VX9100), EnV3 (VX9200), eXpo (GW820), Fathom (VS750), Force (LX370), Glimmer (AX830), Incite (CT810), Invision (CB630), Lotus (LX600), Muziq (LX570), Neon (GT365), Neon II (GW370), Octane (VN530), Optimus (P509), Optimus M (MS690), Optimus S (LS670, Quantum (C900), Prime (GS390), Rhythm (AX585), Rhythm (UX585), Rumor (LX260), Scoop (AX260), Shine (CU720), Spyder (LG830), Spyder II (LG840), Swift (AX500), Trax (CU575), Tritan (AX840), Tritan (UX840), Venus (VX8800), Versa (VX9600), Vortex (VS660), Voyager (VX10000), Vu (CU915), Vu (CU920), Wave (AX380), Xenon (GR500), AX565, AX8600, CF360, CU500v, CU515, LG260, LG380, LX400, UX380, VX8350, VX8360, VX8700, VX9400, can variously encode and decode video in compliance with a variety of standards promulgated by the International Organization for Standardization (ISO) and the International Telecommunications Union (ITU), including MPEG-4, Part 2, H.263 and H.264.

46. LG's video-capable cellular telephones, including, but not limited to, those identified above in paragraph 45, by virtue of the manner in which they encode and/or decode video, infringe one or more claims of the '377 and '878 patents.

47. LG, therefore, by the importing, offering to sell and selling of its video-capable cellular telephones has been and still is directly infringing and/or inducing others to infringe each

-10-

COMPLAINT FOR PATENT INFRINGEMENT

of the MPT patents identified above in paragraph 46.  LG will continue to infringe unless enjoined by this court.

48.     As a result of LG's infringement of the above-identified patents, MPT is entitled to a reasonable royalty on all video-capable cellular telephones sold by LG that embody an apparatus claimed by those patents.

49.     LG's infringement of the MPT patents has caused and will continue to cause MPT and its existing licensees substantial and irreparable injury for which MPT is entitled to receive injunctive relief and damages adequate to compensate it for such infringement.

50.     LG has had actual knowledge of the claims of the '377 and '878 patents since no later than August 13, 2008 when MPT notified LG of its infringement of the Patents-in-Suit. Despite such knowledge, LG has refused to take a license and continues to infringe the patents willfully and deliberately in disregard of MPT's patent rights.

## COUNT IV

### (Patent Infringement Against TiVo)

51.     Paragraphs 1 through 23 are incorporated by reference as if stated fully herein.

52.     TiVo continues to offer for sale and sell in the United States digital video recorders and related software.  TiVo's digital video recorder products accused of infringement by this Complaint include, but are not limited to, the Premier and Premier XL digital video recorders, the TiVo Series 3 digital video recorders and the Desktop Plus software.  These products can variously encode and decode video in compliance with a variety of standards promulgated by the International Organization for Standardization (ISO) and the International Telecommunications Union (ITU), including MPEG-2, MPEG-4, Part 2, H.264 and VC-1.

53.     TiVo's DVR products, including but not limited to the TiVo Series 3 digital video recorders, by virtue of the manner in which they decode video, infringe one or more claims of the '226 patent.

54.     TiVo's DVR products, including but not limited to the Premier and Premier XL digital video recorders and the TiVo Series 3 digital video recorder, by virtue of the manner in which they decode video, infringe one or more claims of the '878 patent.

55. TiVo's Desktop Plus Software, by virtue of the manner in which it encodes and/or decodes video, infringes one or more claims of the '377 and '878 patents.

56. TiVo, therefore, by its offering to sell and selling of its digital video recorder products and related software has been and still is directly infringing, contributorily infringing and/or inducing others to infringe each of the MPT patents identified above in paragraphs 53-55. TiVo will continue to infringe unless enjoined by this court.

57. As a result of TiVo's infringement of the above-identified patents, MPT is entitled to a reasonable royalty on all digital video recorder products and related software sold by TiVo that embody an apparatus or practice a method claimed by those patents.

58. TiVo's infringement of the MPT patents has caused and will continue to cause MPT and its existing licensees substantial and irreparable injury for which MPT is entitled to receive injunctive relief and damages adequate to compensate it for such infringement.

59. TiVo has had actual knowledge of the claims of the '226, '377 and '878 patents since no later than March 3, 2008 when MPT notified TiVo of its infringement of the Patents-in-Suit. Despite such knowledge, TiVo has refused to take a license and continues to infringe the patents willfully and deliberately in disregard of MPT's patent rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Multimedia Patent Trust respectfully requests the following relief:

A. A judgment holding the Defendants liable for infringement of the Patents-in-Suit asserted against them;

B. A permanent injunction pursuant to 35 U.S.C. § 283 against Defendants, their officers, agents, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and all others acting in concert or participation with them, enjoining them from continued acts of infringement of the Patents-in-Suit asserted against them, to the extent those patents have not yet expired;

C. An accounting of damages resulting from the Defendants' infringement of the Patents-in-Suit asserted against them, together with pre-judgment and post-judgment interest;

D.  A judgment holding that the Defendants' infringement is willful, and a trebling of damages pursuant to 35 U.S.C. § 284;

E.  A judgment holding this Action to be an exceptional case, and an award to Plaintiff Multimedia Patent Trust for its attorneys' fees and costs pursuant to 35 U.S.C. § 285; and

F.  Such other and further relief as this Court deems just and proper.

DATED:  December 20, 2010         QUINN EMANUEL URQUHART & SULLIVAN, LLP


By:  *s/Bruce R. Zisser*
    Bruce R. Zisser
    Attorneys for Plaintiff
    MULTIMEDIA PATENT TRUST

<u>JURY TRIAL DEMANDED</u>

Multimedia Patent Trust demands a trial by jury on all issues triable of right by a jury.

DATED: December 20, 2010    QUINN EMANUEL URQUHART & SULLIVAN, LLP


By:   *s/Bruce R. Zisser*
       Bruce R. Zisser
       Attorneys for Plaintiff
       MULTIMEDIA PATENT TRUST